Good morning. May it please the Court, I'm Mike Merchant. I'm here on behalf of the Appellants' Fathers M and D in their effort to keep their private employment and personnel records private, as was originally provided in the protective order entered by the Bankruptcy Court back in 2005 prior to a mediation of many, many cases. None of which involved the appellants. I accept your premise as a general matter, but not in the context of employment records, which are nearly universally recognized as records that are entitled to some protection. The cases are almost all in district court, but it is well accepted, even some courts so far as Raddatz, which is cited in our brief, that personnel records related to persons who aren't involved in the case shouldn't be produced at all. There are statutes in Oregon and elsewhere that limit the production of personnel files in litigation. So is discovery presumptively public? Once produced, but I don't believe that it's presumptively entitled to be discovered. We have two different bodies of materials here, right, that we're looking at. There was the documents that were filed in the Bankruptcy Court, and those are covered by Rule 107. And then we have the documents that were produced in discovery, not filed, and those we're looking at the Rule 26 issue. Is that right? They are together. There is one document that was filed in the Bankruptcy Court where 107 is an issue, and that was the various tort claimants' motion with respect to punitive damage, what could be awarded in Bankruptcy Court as punitive damages. The primary protective order was entered just prior to court-ordered mediation that involved all the parties. And in the – it's in the supplemental excerpt of record, I think pages 25 to 86, where the parties and interested persons who did not include my clients, who had no notice of this whatever, worked out a deal to get records sufficient for the tort claimants, and there was a group of them, so they could assess their claims sufficiently for purposes of mediation. That's how the protective order came about. After that, there were motions filed because one of the big issues was whether or not the tort claimants were going to be able to pursue the Archdiocese for punitive damages. Among the records that were filed together with that motion were records that named certain priests. Included among them were the appellants. But for purposes of determining whether the district court's ruling was correct or erroneous, what rule are we applying? Are we applying the rule in Section 107, or the rule in – or Rule 26C, or what, for the good cause? Or are we just looking at common law principles? I think we're doing all three. I think we start with 26C. I think we start with 26C, and we also start with the – and we also need to look at the language of the protective order, which precluded – well, which limited what documents could be filed with the court. And as we point out in our brief, that if you could simply attach documents to motions, and particularly nondispositive motions filed in bankruptcy court, and obviate the protective order, what's the point? So how – well, the protective order was stipulated, right? There had been no good cause showing initially. I – I don't know if that's correct, because Judge Parris, in her decision – I think it's in Note 6. In footnote 6, she notes that it really wasn't stipulated. It was negotiated, and it was actually negotiated at the hearing. And you can see that in the supplemental excerpt of record in 25 to 86. It wasn't – But the key – did the district court make a finding of good cause? That's the key that we've said in our cases that makes a difference. Right. The district court made no such finding. And the reason why we're here is in a circumstance where the real interested parties, the archdiocese – The district court or the bankruptcy court? The bankruptcy court. Sorry, Your Honor. I'm not trying to pick. Yeah, no. The bankruptcy court. You're talking about the trial court. Correct. The district court. I understand that the bankruptcy court is part of the district court, so I'm not trying to pick. I just want to make sure. Right. The district court's role was limited to a record review. Right. Exactly. So I just want to make sure. But I have a little difficulty. This is a reference to my initial question. You rely on the protective order, and – but the bankruptcy judge issued the protective order may have been perfectly fine and justified, but then the judge who entered the protective order made a new finding, a new determination, and decided to withdraw or rescind the protective order, in part, not completely. I mean, many things were kept confidential. Many things were kept – were redacted. So I have a hard time when you rely on the protective order when the judge who issued the protective order has herself then gone back and modified it. What right do your clients have to rely on the original protective order, which by its nature is provisional? I think the reason we're here is because the way that protective order came about doesn't afford interested persons, the appellants, who weren't given notice or an opportunity to be heard enough protection. And the blanket reliance on the – But they intervened at some point, right? They intervened only after the case is – case is settled, which is a real problem, and – They participated in the part of the decision-making process where the judge rescinded the order? They participated in the – the way it worked procedurally is after the case is settled, after the tort claimants got their money, after the archdiocese got its discharge, under the terms of the protective order, the various tort claimants could seek relief from the order and publish the – and publish documents, which is what they wanted to do. That is when – that is when my clients became involved. That's when my clients were first given an opportunity. But why did the district court – and I think I'm in the district court here. Maybe it was the bankruptcy court. Why did the bankruptcy court abuse its discretion in saying, no, applying Rule 26C here, this information, these documents should be released? Why was that an abuse of discretion? Isn't that the standard we would have to find? I – can I – I have two parts to my answer to your question. The first is I think the rule as applied ought to be changed. An interested person who is – whose very private personal information is produced so the parties to litigation can serve their purposes, who is subsequently dragged into it should not be required to make a good cause finding. I think this court can change that rule. I think that the litigants who then come back and seek relief from the court and say, oh, you know, we didn't – we didn't really serve these interested parties well at all. We got what we wanted. It served our purpose. But now we want to do something that harms them. They should maintain the burden. So that to me is an error of law. But on the abuse of discretion, I think the court needs to consider the – the bankruptcy court needs to consider the consequences of the decision made, the relief granted. So the bankruptcy court did say, let's see, that your client's desire to be protected from scandal doesn't demonstrate a clearly defined and serious injury outweighing the public interest necessary to establish good cause. So she did make a ruling on that point. Why wasn't that enough? Why did she abuse her discretion in saying that? Because to so cavalierly dismiss the nature of the allegations when viewed by if this information is disclosed it might make some people who don't know the appellants feel better versus it can be potentially catastrophic and ruinous and dangerous to them both health-wise and say there is an amorphous public interest in a case that you weren't a party to. Therefore, we're going to put this information out on the Internet and publish it is an abuse of discretion. It was not a proper exercise of discretion because when considering making the factual determination of the very real harm that comes from being associated from – this is probably second to Boston in the terms of notoriety nationally – being associated with that, none of these various tort claimants who are the appellees here know anything about my clients. They had no interaction with them. There is nothing about the relationship between the various tort claimants and these appellants that really serves a public interest other than we just want to put it out there and let people know. It is a generalized statement. And I think your test on the Ninth Circuit test in Phillips doesn't require – it doesn't require specific examples. That's one of the phrases used in Phillips. But it also talks about an articulated reasoning. And I think if you look at the Kramer case – Kennedy, counsel, you're talking about Phillips. On your first point, the Petitioners here should not be required to show good cause. Phillips specifically says a party opposing disclosure shows good cause why a protective order is unnecessary. Now, you're asking us to go against a determination by a panel of this Court, which we can't do under the rule of circuit. I'm asking you to distinguish Phillips because Phillips involved parties who stipulated to the order and it was their information. It was their fault that they didn't make a finding of good cause. And it's one thing for – it's one thing for the parties to enter into a stipulation and not make a good cause showing and subsequently live with the consequences, whether it's one party or the other or an intervener, is a whole different matter when the person who really has the interest, the employee, is precluded from having that opportunity. So I'm arguing for an exception to Phillips. I'm sorry. What opportunity is this? Your clients were not parties to the case at the time the original protective order was entered. That's – my clients have never been party to any case except for when we were invited to protect their interests as interested parties after the settlement in bankruptcy. You say never except. You're saying they were. Never prior to entry of the order. Answer my question and then we'll move on. Did you hear my question? Do you remember my question? I heard your question. Okay. What's the answer to my question? Were they parties to the litigation at the time the protective order was entered? No. So easy. Were they parties to the litigation at the time the protective order was modified? I'm not trying to avoid your question. No. I mean, they weren't – they weren't parties ever. They were interested persons sufficient to have standing to protect their interests. I'm not trying to – I have the impression that my understanding was that they intervened in the case. Because otherwise I don't know how they are appealing to us. They are parties to the proceeding now, right? They intervened. The motion is to intervene, right? I don't believe there was a motion to intervene. I don't recall. I don't think there was a motion to intervene. They had the – How are you appealing? You can't just have somebody off the street appealing. Right? Somebody from Pioneer Square can't just come in here and say, hey, we are aggrieved by this order by the bankruptcy court. We want to appeal. I believe they intervened. And I don't know at what point. But they had a chance to speak to the bankruptcy court. Certainly. Okay. And try to persuade the bankruptcy judge to excise their names or not release their personal records. They had that opportunity. That is correct. Okay. So how are they in a different position than the Phillips – than the Phillips parties? I mean, it's not like this was done in their complete absence. They were there. It was done, you know. And it was – they were there. They were given a chance to make a showing. It is different in Phillips in that at the time – at the time the protective order was originally negotiated and entered by the bankruptcy court, that was the time. They weren't parties to that, and we grant you that. And that's why I asked you that first question, which took you so long to answer and say no. But the answer is they weren't parties to that. But the fact is that is no longer the part of the protective order that governs proceedings. They were happy with that order. There was nothing done in that order that harmed them because that order said this information is kept secret. So they weren't really prejudiced by that. They were prejudiced when the judge goes back and changes it. And at that point, they are parties to the proceeding. Were they given – how were they given notice of the determination that their personnel files would be made public? They were given notice by the counsel, Margaret Hoffman, the counsel for the Archdiocese. So it was informally. Did she have a requirement to give them notice, or did she just do it informally? It was – I had notice earlier because there was another issue involving Father M and the production of privilege records that we argued in the bankruptcy court and then took up to the district court. So I knew because I was involved. But, no, it was done informally. I don't remember that there – I don't recall that the protective order – the protective order had a specific provision requiring the Archdiocese or the tort claimants to give those priests notice. And one of the things that is in – you'll look in the colloquy between counsel when that order was originally entered, is that there was an acknowledgement by all there that there were – that there were priests like my client, clients who weren't represented, who didn't have an opportunity to be heard, and the issues pertaining to them, other than medical privilege issues, were never discussed. And that's why I'm trying to – Judge Kaczynski, that's why I'm trying to say this case is different. Because as a practical matter, the time to control what is produced in discovery and the order that is entered is before the documents are produced, not after. So let's go back to that point in time, and let's say that they had been given notice at that time and been able to participate. What would have been the consequence of that? What could they have done? They don't have the records, so it's not like they could refuse to produce them. What is it that they could have done had they gotten the notice? They could have intervened. They could have asserted – And done what? Sought a specific finding of good cause and better protection in the protective order. Had that been unwilling, they could have sought immediate relief to an appellate court. But more importantly in the way this case came about is the limited purpose for which those records were requested was the pattern and practice of the archdiocese. It didn't have anything to do with the appellants. That purpose could have been served. They could have argued that the names be redacted, perhaps, that this not be produced without the names being redacted. That is certainly correct. And that is absolutely correct. Because when you look at the original purpose for which the records were requested and the order entered – And then in the back end, they wouldn't have to make a showing because their names are on the patch. Well, they might – That's – that is also correct. And if – and had that good cause showing been made, which I think, just based on experience, I can't – would have been quite easy with respect to non-party employee personnel records. There are many district court cases. Do you want to say that? Yes. Okay. We'll hear from the other side. Thank you, Your Honors. May it please the Court, my name is Erin Olson and I represent the various tort claimants. I want to go first to some of the questions that the Court asked Mr. Merchant. I'm trying to understand, what interest do your clients have? I mean, they've been paid, right? They've settled the case. What interest do your clients have now in the disclosure? My clients from the very beginning have sought the disclosure of these records from the outset of the bankruptcy litigation because their position is that they were abused as a result of concealment by the archdiocese of these priests throughout a very long history. And that by releasing these documents, they would protect other children, they would hold the archdiocese accountable, and they would identify to the public who these child-molesting priests were. Let's take those in order. Making the archdiocese accountable, I presume that that was done as part of the settlement. So achieve that goal. Not done as part of settlement was the resolution of the document release issue, which was an issue that had been raised from the outset of the archdiocese bankruptcy. And, in fact, the reason the archdiocese filed for bankruptcy was a punitive damages claim that sought to expose their longstanding pattern of concealing child-molesting priests. So the settlement was a monetary ---- But they got that. They got the settlement. Yes. They achieved the objectives of the litigation. And now they want to release these things, what, for vengeance? I'm trying to understand what they have at stake here. It's not trying to get information of who they are so they can sue these priests, right? They haven't, and they are not. Because they know, because you are their lawyer, so if they wanted to sue the priests individually, they would have that information already available. Correct. They want to put it on the Internet. They want to embarrass them. They want to make them suffer, right? They want to hold accountable the archdiocese and the priests who are what led the archdiocese into bankruptcy because of their actions and inactions. The archdiocese is already public. They've paid. And there's nothing else you're going to do to the archdiocese, right? I respectfully disagree with that, Your Honor. We are going to hold the archdiocese accountable and prevent them from doing what they've done for the last 100 or 200 years. What do you mean hold accountable? An account stated is for money. You've gotten the money in the settlement. What do you mean? This is a rhetorical, perhaps journalistic phrase, hold accountable. You're in a law court. I understand that. I mean, I can understand you want to protect other children by letting everybody know, like in Megan's law, that these people are abusers, right? That I can understand. But why don't you get on to something else than hold accountable? Because we're not the press here. I understand that, Your Honor. But accountable means more than just money. What does it mean? It means exposure. It means... You've already exposed, as Judge Kaczynski pointed out, the archdiocese is already exposed. But the degree of their exposure is, in some parts, concealed by the continued concealment of the records that are the subject of this dispute. Well, you should have litigated for that. You should have put that in your settlement. You know, if you wanted more than another pound of flesh, you could have held out for that in the settlement. I'm not sure. I mean, other than making life miserable for these two priests, I'm not sure what else you're achieving here. Your Honor, I... And why this is a legitimate objective after the case is over, this is a legitimate objective for your clients to pursue. It's a legitimate objective for their benefit and for the benefit of others like them. If you sue these folks and you get, you know, that's one thing, but to use litigation against a third party where they are not parties as a way of digging up dirt on them and throwing it on the Internet, it just strikes me as vengeful and sort of unnecessarily disruptive and pain-producing. You know, if the legislature says there will be a Megan's Law and you've got procedures and so on and people have to register, there's at least a finding of determination of guilt, here there's been no determination at all. We don't, we have some facts, but there's been no determination at all that these two individuals were involved in anything. You have a conclusion by a bankruptcy court judge who has reviewed documents. That bankruptcy court judge made findings that the allegations against these two priests were credible based on, one, in the case of Father Dee, his admission to abusing a child to his archbishop. That's not a child. That is not, they weren't parties to the proceedings. I mean, it's a little troubling if you sort of, if you distance yourself from this particular case and the facts of this case, that somebody's name gets involved in litigation between two other parties and somehow because let's say they were a customer or they were a client or they had some dealings with other parties, records get revealed that disclose information that is highly damaging to the third party, that the discovery process becomes the indictment, the trial, and the execution all at once in a proceedings where this third party has none of the rights of a normal party to dispute, to litigate, to provide contrary evidence. Your Honor, the appellants before this Court were given the same standing as the archdiocese to litigate the issues of these documents. They were given it in the original protective order, which is found at ER 115 to 116. And pursuant to that protective order, I sent Mr. Merchant, I did, not Mrs. Hoffman, for the archdiocese. Pursuant to the terms of the protective order, I identified each and every document that was proposed for release, and I put Mr. Merchant and every other attorney for accused clergy on notice that I intended to release the document. I filed the letter of the order that Judge Parris issued, plus I gave additional notice because of the volume of documents and because I wanted to provide ample opportunity for them to litigate, which they did. Did you send them a summons? Did you name us as party defendants? No, I followed the Court's order. The Court had set very specific terms of an order that gave them standing. They are here before you because the Court gave individual clergy standing to appear on their – to protect not their records, let's be clear. These are records of the archdiocese. They were given notice at the time before the protective order was entered, so they could come in and argue against it or argue that the material should be produced in an adapted fashion? All of the priests who are at that point identified, which these two priests were not, at the point in time that the original protective order was put into place, all of the individual clergy who at that point had been identified as child abusers were put on notice through their counsel. They participated in the litigation that led to what was a stipulated protective order. There's no stipulations at the bottom, but if you read the transcript, it was stipulated. The answer to my question is no. We're talking about these two guys. I understand that. Okay. So your answer is no. They were not parties. They did not have a notice to come in and argue about the order. That's correct. Okay. So any argument they might have had that their names should be redacted out when they provide information, that was not available to them, right? They had not been identified as child abusers, even though they were known to be such. And are there any of your clients that claim that these two particular priests were involved in abusing them? No. So this is just sort of a, we're going to try to dig up as much dirt as we can and put it on the Internet as a sort of payback for wrongs committed against other parties. That is not what this is, Your Honor. The Catholic Church is much safer as a result of efforts just like this that have gone on in every diocese that's filed for bankruptcy and every one that hasn't. I'm not talking about the church. I'm talking about these two persons. These two priests have never been held accountable for molesting children. Okay. And I don't use that in the financial sense. They've never been publicly identified as child abusers. That's what you want to do. What you want to do is to make them suffer. No. I want to identify them so that the people that they abused will know that there has been an acknowledgment that that's the case. Who are these people? That information has been protected. They're not your clients. They are not my clients. Okay. Your Honor, the issues that were raised in terms of the protection. How would these people be any worse off if all the information were released but the names were redacted? Because the names identify where they were so that people who were victimized by them might feel some sense of relief. That information could be left in, right, as to the location, you know, the parish or the... The identity of the names is significant because of the public, the way that they've been presented publicly by their employer and by themselves. So to allow them to, you know, to find that Judge Paris abused her discretion because she didn't redact their names, I submit would contradict her very express findings. It's a balancing test, right? So you could say, well, there's a lot of stuff in the personnel file that maybe needs to be replaced. But, you know, we really come down to the question of does the release of the name, is the harm caused by the release of the name substantially outweighed by the benefits of disclosure of the names? Well, the balancing test you've described is not one that's been put into place by this court. The bankruptcy court did... Let's put it the other way around. They say, look, we have shown that release of our names would cause us grave harm. I'm willing to believe that. In fact, that's what you're trying to achieve. You're trying to achieve grave harm to them. This is what it's all about, punish them, you know, make it public, make them embarrassed. And I'm certainly willing to believe that this may be perfectly justified. I'm not saying it is, but it certainly would cause them grave harm. So how do we – why is it not an abuse of discretion for the judge to say that whatever generalized benefit there is from releasing the names is outweighed by the grave harm to the individuals by release of the names? We're not talking about the entire file. We're just talking about the names. The judge had the discretion to do so, and she declined to. She found that the public... But you're here on appeal trying to defend why that is not an abuse of discretion. And given – there's no doubt that this is grave harm to the individuals, and this will have a substantial, deleterious effect on their lives. You believe it's deserved, and perhaps it is deserved, but it is, in fact, harm. Why isn't that outweighed? Why does not gravely outweigh the generalized benefit to unknown parties who are not even your clients, unknown members of the public who may or may not have some benefits from learning these names? For all we know, it could make it worse. Learning that, you know, your parish priest was a child molester may make a lot of people feel bad. You're – we're back to an abuse of discretion standard. Judge Parris weighed the very specific... I got that. ...specific arguments that were made. I'm asking you to defend why it's not an abuse of discretion. So pointing me back to the standard doesn't help. I do understand the standard is abuse of discretion. On the other hand, we reverse for abuse of discretion all the time. So I'm trying to get you to explain to me why it's not an abuse of discretion to cause this great, palpable, serious individual harm to two individuals in order to get some difficult-to-articulate and understand diffused benefit to unknown parties who are not even parties before the court. Well, it's not abuse of a discretion because the wrong legal standard was not applied. I don't think anybody's suggesting that Judge Parris applied the wrong legal standard. I will. I'm sorry? I will. She said, Father M's and Father D's desire to be protected from scandal did not demonstrate a clearly defined and serious injury. Isn't that illogical, implausible, and without inferences from the record? I mean, we all agree that, and perhaps as put by Judge Ikuda, you want to inflict an injury, a reputational injury on them, and the court found that they did not demonstrate a clearly defined and serious injury. And she made that finding based on the affidavits that they had filed in the bankruptcy case. But don't we all agree that it's practically indisputable that naming them as child abusers will cause them a serious reputational injury? I stipulated to that in my pleadings. Well, then she was wrong, flat out. Because she used some legal language. She talked about scandal, which is what the court has talked about in its decisions, even applying the common law standards. And scandal has a legal meaning. The legal meaning requires more than just it hurts your reputation. It requires that you're talking. You're verging into the 107. I think this was part of her Rule 26C ruling. So we're not talking about whether it was scandalous for purposes of 107. But if you could just address why that part of her determination, that it doesn't demonstrate their desire to be protected from scandal. So it's a desire to be protected, not that the material was scandalous, doesn't demonstrate a clearly defined and serious injury. So is that illogical, implausible, and without support? And you seem to be saying, yes, it was, because you stipulated that would cause them a serious injury. It would cause them harm to their reputation. But whether that was sufficient to a sufficient interest of theirs, that is to preserve their reputation, to outweigh the other interests that were expressed through the declarations and the evidence that were received by her and evaluated in her balancing of these various interests, then I think you have to consider the finding in context. If you're branded a child molester, then yes, it's going to harm your reputation. But it ought to, because the public needs to be protected from child molesters. But the sheet in the bankruptcy court did not explain how it reached this balancing. It didn't explain how the public interest outweighed the injury. At least as I read her opinion, I didn't see any specific identification of how that weighing was done. Now, was that an error in failing to give specific reasons as to what the public interest was and how it outweighed the injury? In her 37-page opinion, I think she did. I respectfully disagree with your conclusion that she didn't apply a balancing test. She weighed each and every one of the arguments that was made by the appellants here today and balanced those against the arguments that were made in support of disclosure. She did it with respect to each individual priest as they were represented by counsel, and she did it with respect to each of the arguments that was made by the tort claimants. But each of the individual priests, each of the arguments of the tort claimants did not include these two priests because these two priests weren't tort feasers as to your clients. No, but they were tort feasers in the bankruptcy because the punitive damages claims were based largely on the acts of the archdiocese, including but not limited to the acts with respect to Father D and Father M. The pattern and practice evidence that was the basis for this entry of this protective order was to support the bankruptcy court said punitive damages claims, but it was also to support negligence-based claims against the archdiocese. So while there were no claimants, that is, there were no claims against these individual priests in that they were not individually sued, their actions were the basis for punitive damages claims and their actions were evidence that supported the negligence claims of other tort claimants. They are not like customers who are innocent third party whose records might come into discovery. They were the very people whose actions the archdiocese concealed and those actions are what led the archdiocese into bankruptcy. Well, you say they're not, but if this case came in the same posture and they were a customer like that, wouldn't we, according to your theory, we'd have to affirm that as well. I mean, let's say there was a customer at a smudge shop or something or frequent customers at a liquor store and could be shown to have bought muscatel by the case. You know, there are all sorts of things that people do that are perfectly legal but embarrassing. And the court says, well, you know, this is a good lesson to the world at large that you shouldn't be going and buying muscatel by the case. Those are perfectly legal actions. The actions of molesting a child are not. There is a significant distinction. But if the trial court says, I'm not convinced that this is out, their interest in privacy is outweighed by the need to send a message to the public, we'd be in the same position here reviewing that for abuse of discretion. And if we affirm in this case, how would we keep from affirming in that case as well? You would look to the reasons expressed by the trial court and determine whether they were. . . Essentially, the reason there is these guys are guilty. The trial court here thinks they are bad guys. And I'm not sure that that is a legitimate reason in a discovery order, the determination by the court that parties who are not parties of litigation are bad guys, that that winds up being a legitimate reason to allow disclosure. Then you get into the question of what is a bad guy and how much muscatel you have to be buying in order to become a bad guy. Courts have to make those decisions all the time. And they make them all the time in the context of what to protect by protective orders and what to release from protective orders. That's what courts do. Usually they do it when they are named as defendants, when the parties at stake are named as defendants. When you're dealing with third parties, you know, it's a very – it's a highly slippery slope to use names of third parties and the reputations of third parties to teach lessons in litigation in which they are not even named as defendants and can't really defend themselves or take appeals from any substantive ruling. They are not innocent third parties. They were agents of the archdiocese whose actions led the archdiocese into bankruptcy. And they were permitted to litigate these issues to the fullest extent, just as the archdiocese litigated these issues to the fullest extent. They were invited to participate. They were ordered to participate pursuant to Judge Parris's order. And they have done – Mr. Merchant mentioned earlier litigation on privileges. There are no privileges before this Court. Those issues were all litigated, including with respect to Father M., in earlier proceedings because it was part of Judge Parris's protective order. That the privacy interests of the priests whose conduct was at issue in this case would be protected, and it was throughout this litigation. I would ask that you find that Judge Parris did not abuse her discretion in making these rulings. Thank you. You had about a minute, I believe. Excuse me, Your Honor. I think you had a little time left, so about a minute. Yeah, I have a minute, seven seconds, so I'll try and speak quickly. Use it wisely. And there are a couple of things I want to point out, and the important one is where this all started with Judge Parris's – it's in S.E.R. 198 where she says that she I'm trying to make. I also want to point out to the Court that no matter how many times the appellants claim that this led to the archdiocese doing something and led them into bankruptcy, it's in her submissions that when – at least with respect to one of the priests, when the archdiocese found out they notified the district attorney and the district – that's what she's relying on to establish it as credible evidence, the report from the archdiocese to the district attorney. So the holding them in account and that the archdiocese did something wrong and they're agents of it is simply not true. And no matter how many times she says child sexual abuse, it doesn't change the standards that should apply. It makes us inflammatory. It underscores the Court's point that this really is harmful to the persons who are accused. And lastly, there is no remedy for these priests. What are they to do? Are they to go back and sue the people who are mentioned and have a claim that the report you made isn't true? Who benefits from that? That would be the only way that they could defend their reputational interest is to go back in one case of something that occurred more than 25 years ago and say it didn't really happen that way. And no benefit to no person would be achieved by leaving the appellants with that as their only remedy if Judge Parris is – Wouldn't the people in the neighborhood be benefited by knowing about these priests? If they have children? Not necessarily. This goes right to what – It doesn't have to be necessarily. It has to be probably. With respect to one of them, no. He doesn't live in a neighborhood. He's 86 years old. He lives in an assisted living facility and he's been medically disabled for over 20 years. So no with respect to him. And the other is in an adult environment. So no. But it proves the same point that if you can't establish that those – are true or false, you're punishing somebody without giving them an opportunity to defend themselves. Okay. Thank you. Cases and arguments stand submitted. We are adjourned.
judges: Kozinski, Bea, Ikuta